JONES, Plaintiff and Respondent, vs. KRUEGER, Defendant: GAGNON CLAY PRODUCTS COMPANY, Impleaded Defendant and Appellant.

*April 11—May 7, 1957.*

For the appellant there were briefs by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *James L. Everson.*

For the respondent there was a brief by *Marth & Marth* of West Bend, and oral argument by *William J. Marth.*

MARTIN, C. J. Edward Krueger was the owner of a leasehold interest in a deposit of shale which had a value in the manufacture of brick. In June of 1954 he entered into an oral contract with Badger Ceramics, by the terms of which Krueger was to supply shale at his expense to Badger, a brick manufacturer. Krueger testified the shale was to be made into brick and he was to have the exclusive right to purchase it at a price of $28 a thousand.

Krueger then entered into an oral contract with Gagnon Clay Products Company to sell it the brick obtained from Badger at a price of $45 a thousand.

Gagnon had advanced $5,000 to Krueger during the summer of 1954 to enable him to meet his expenses of supplying the shale, with the understanding that Gagnon would be repaid by purchasing brick from Badger through Krueger at $28 per thousand, the difference between the $28 and the $45 per thousand to be credited to Krueger's indebtedness to Gagnon as the brick was delivered. On September 5, 1954, when the balance had been reduced to $4,100, Badger Ceramics notified Krueger it would no longer fill any orders

placed by him or Gagnon. Although Krueger had no written contract and Badger denied any obligation, Krueger had delivered quantities of shale to Badger which he valued at about $6,500. On September 10, 1954, upon the advice of its attorneys, Gagnon Clay Products took a promissory note in the amount of $4,100 executed by Krueger, together with an assignment reading as follows:

"For value received, I hereby assign and transfer to the Gagnon Clay Products Company all claims, demands, and rights of action owned by me under a certain contract with the Badger Ceramics Company, Inc., of Waupaca, Wisconsin, said contract being for the supply of raw material known as shale for the manufacture of bricks and the purchase by me from the Badger Ceramics Company, Inc., of the finished brick made from said raw materials, so supplied.

"I further assign and transfer all my right, title, claim, and interest in and to the brick manufactured by the Badger Ceramics Company, Inc., therefrom whether presently in the possession of the Badger Ceramics Company, Inc., or not and further assign and transfer all my right, title, and claim that I may have against the Badger Ceramics Company, Inc., for the value in money of the raw material known as shale that I have supplied pursuant to said contract, but that I have not been paid for by the Badger Ceramics Company, Inc.

"This assignment is made as a security for a certain demand note bearing my signature made concurrently with this assignment payable to the Gagnon Clay Products Company."

Written notice of the assignment was given by Gagnon to Badger Ceramics by registered letter dated September 21, 1954, stating that the assignment was held as security for the debt evidenced by the promissory note.

After the assignment Gagnon made arrangements with Badger Ceramics to continue buying brick at the same price that Badger got from Krueger, and Gagnon applied to Krueger's debt the difference between the price from Badger and the price from Krueger. Krueger gave his "OK" to

Gagnon's buying direct from Badger and applying credits to his account. The balance was brought down to $1,771 when Badger Ceramics raised its price.

It was the opinion of the trial court that the assignment was a conveyance in fraud of creditors and void. We cannot agree.

This was an assignment of a chose in action and solely as security for a demand note. Whatever the exact agreement between Krueger and Badger Ceramics may have been, the evidence is that Krueger supplied the shale and claimed the exclusive right to purchase the finished brick at an advantageous price. After delivery to Badger Ceramics Krueger did not own the shale. Nor did he own the brick, although he testified he assumed he owned it—a statement which was merely his conclusion. At best he had the right to purchase the brick. If Badger refused to honor their agreement, Krueger had only the right to be paid for the reasonable value of the shale or, if he could prove it, damages for breach of his contract.

A chose in action is defined in 1 Bouvier, Law Dictionary (3d ed.), p. 483 *et seq.,* as:

"A right to receive or recover a debt, or money, or damages for breach of contract. . . . It includes . . . all debts and all claims for damages for breach of contract. . . . a personal right not reduced into possession but recoverable by a suit at law. . . . There can in the nature of things be no present possession of a thing which lies merely in action."

The finding that Krueger retained "possession and control of the property assigned" ignores the fact that there was no tangible property which Krueger could possess or control. Much is made of the fact that Krueger "OK'd" the purchase of brick by Gagnon from Badger Ceramics after the assignment. The only evidence with respect to Krueger's alleged "OK" is that he was notified of the sales by Badger to

Gagnon. This is not evidence of control; it simply indicates a matter of bookkeeping procedure which would be necessary to all parties concerned in keeping their accounts. The procedure was agreed upon between Gagnon and Badger Ceramics, and Krueger testified unequivocally that he did not deal with Badger or sell any brick after the assignment.

That the assignment was given solely as security for the note is manifest from the language of the assignment itself:

"This assignment is made as security for a certain demand note bearing my signature, etc."

That purpose is likewise expressed in the letter by which Gagnon notified Badger Ceramics of the assignment. It is not disputed that, with respect to the brick sold by Badger to Gagnon, after the assignment all sums due Krueger were properly applied to reduce his indebtedness to Gagnon. A balance of $1,771 was still owing at the time Badger refused to continue the arrangement.

Plaintiff's principal argument is:

"An assignment of property which exceeds the value of the assignee's claim, when it is agreed that the assignee can continue to sell the goods; that any surplus realized from the sale thereof belongs to the assignee and upon payment of assignee's claim the assignment would be canceled, creates a trust for the benefit of the assignor, which is void as to assignor's creditors."

The main fallacy underlying this argument is the premise that the property assigned was the manufactured brick and the title to shale delivered by Krueger to Badger Ceramics. He cites various estimates given in the testimony as to the value of the brick and shale, but all these are immaterial. The issue to be decided was the amount of the indebtedness of Badger Ceramics to Krueger. On the basis of the value of the shale supplied to Badger, Krueger claimed it was $6,500; Badger claimed it was approximately $3,700.

Krueger owed Gagnon $4,100 at the time of the assignment and reduced that debt to about $1,800 through credits in subsequent Gagnon-Badger transactions. The trial court itself adjudicated the indebtedness of Badger Ceramics to Krueger at about $2,300. Thus, the value of the chose in action assigned closely approximated the debt secured thereby. There is no basis in the record for the finding that "much more than necessary to satisfy the debt . . . was assigned under the assignment of September 10, 1954."

"The giving of security in excess of the debt secured is not a badge of fraud unless the amount of the collateral given is unreasonably greater than the debt and the transaction is not explained." 37 C. J. S., Fraudulent Conveyances, p. 924, sec. 81 b.

Any disparity between the value of the security and the amount of the debt is adequately explained. At the time of the assignment the exact value of the chose assigned was difficult to determine since the contract between Krueger and Badger Ceramics was in dispute; and such disparity as the record shows can hardly be considered unreasonable under the circumstances. And the rule is:

"An assignment that is made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured, although the assignment is absolute on its face." 6 C. J. S., Assignments, p. 1150, sec. 93.

The trial court found that the purpose of the assignment was to prefer the assignee, to secure all assets available to creditors for the sole benefit of Gagnon, and to exclude all other creditors. The finding is not supported by the evidence. In the first place, a preference is a legitimate exercise of a debtor's rights and carries no inference of fraud. 37 C. J. S., Fraudulent Conveyances, p. 1063, sec. 237.

Further, as the trial court pointed out, there was no proof that Krueger was insolvent. The evidence shows he owned assets, including a summer home and his leasehold interest in the shale deposits, which were not affected by the assignment. It is true that Krueger testified his total business assets were in the operation at Badger Ceramics and that would be the only source from which any other creditor would ultimately be paid; but this is only his conclusion and it completely overlooks his other assets. There was no proof that any creditor was defrauded. Fraud must be proved by clear, convincing, and satisfactory evidence. 37 C. J. S., Fraudulent Conveyances, p. 1243, sec. 415.

Plaintiff maintains that the assignment created a trust for the benefit of Krueger which is void as against creditors under sec. 241.01, Stats. This is a security assignment. No trust was created; the assignment inured to the benefit of Gagnon, not to Krueger. The cases cited by plaintiff are all distinguishable on the ground that they involve vendor-vendee transactions of tangible goods.

Nor is there any merit to the contention that there was no fair consideration for the assignment. As stated in sec. 242.03, Stats. :

"Fair consideration is given for property, or obligation, . . . (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

The judgment must be reversed, with costs to the appellant and the cause remanded for the entry of judgment for appellant in accordance with the demands of its cross complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the interpleaded defendant in accordance with this opinion.